Next case, actually the last case, called for arraignment in re Marriage of St. Peter There is no evidence that the children were even aware of these circumstances, nor is there any evidence that they have been harmed by the circumstances. Yes, it wasn't very intelligent of Mr. St. Peter to send the text messages to his wife, while this case was pending, Yes, it wasn't very intelligent of Mr. St. Peter to send the text messages to his wife, while this case was pending, but unfortunately, during these protracted litigations, that happens and people do stupid things. But, when there's no evidence that that's affected the children, I don't believe that is fair to Mr. St. Peter. Also, Emily called her mother to try and have her testify as to Mr. St. Peter viewing pornography or some of these other sexual activities. Mrs. Ash testified herself that she never witnessed anything. Everything that she would have testified to would have been hearsay, based upon what her daughter had told her. Your Honor, at this point in time, we believe that the trial court abused its discretion in awarding custody to Emily St. Peter, and we respectfully ask this court to reverse that decision. Thank you. Thank you, Counsel. Counsel? Good afternoon, Your Honor. My name is Norma Miner, and I represent the appellee, Emily St. Peter. The issue before this court is whether or not the trial judge abused his discretion. And I believe the appellate courts have made it clear that abuse of discretion is when the judge acts arbitrarily, without conscientious judgment, in view of circumstances, and exceeds the bounds of reason, ignoring recognized principles of law, or substantial injustice results. In this case, I do not believe the evidence will support any abuse of discretion. The judge took everything under advisement, stated very clearly he considered all of the statutory factors in 602. Jeremy St. Peter seems to be basing his case on the fact that he had temporary custody under a temporary custody order, and therefore should have retained permanent custody. I do not believe that's the law, and I think the law is very clear, that the temporary custody order does not prejudice the rights of the parties in a subsequent hearing on those issues. And I would have the court to acknowledge, to notice the record sheet of the temporary. When the temporary custody order was entered, the judge at that time was Judge Moore, and he stated, the petitioner, Ms. Miner, children shall remain with Petitioner James Jeremy St. Peter during the pendency of these proceedings until further order of the court. That court, the temporary court, did not expect that the children had to remain there simply because they were there on a temporary order. And I believe that one of the cases cited by Mr. St. Peter is entering marriage at Heifer, that clearly states, and held in that case, that Section 501 of the Marriage and Discrimination Marriage Act, dealing with temporary relief in general, provides that an order entered under this section does not prejudice the rights of the parties which are to be adjudicated in subsequent hearings. It said, no presumption in favor of the existing custodian under Section 602, as there is in modification cases. There's been a little bit of conflict about how Jeremy got possession, or got custody of these children. Jeremy had testified that it was due to the children making noise, hurry out and get the children, and they were calling the police. He believes that's the reason he was turned over, that's the reason he got the children. Emily St. Peter testified that after staying in Freeport, Illinois, near her family, Jeremy would not provide any kind of financial assistance because she could not raise these children financially. It was the reason she had to return to Southern Illinois. It had nothing to do with the incident. She testified that Jeremy would only give her money if she would sleep with him or perform some sexual act. And when she would not do that, he would not give her money. One of the other issues that the court looked at, and when he noticed in his decision, was Jeremy's tendency to offer more time with the children if she would perform a sexual act. She testified that he would tell her that if she would give him a blowjob, that he would let her have more time, or he'd let her have money. So there was a lot of testimony about Jeremy's behavior with his sexual manipulations. Is there any evidence that his alleged immoral behavior in any regard affected his relationship with his children? Your Honor, I believe, as Emily St. Peter probably said it best, when she said his behavior destroyed our marriage, and I do not want it to destroy our children, when they testified, or their brief states, that the children had no knowledge of this, Emily St. Peter testified on two separate occasions that the oldest child did walk in on him twice. Okay, but I understand. I assume we had no guardian ad litem or advocate for the children to talk to them, or the court didn't talk to the children at all. That's true. These are very poor people. They could not afford the guardian ad litem. I would love to have had psychological evaluations done. They didn't have the money for that either. I was the third attorney into this case representing Emily St. Peter. I was not the attorney during the temporary relief, was not the attorney at the beginning, the first temporary, or the reconsideration of the motion to modify. I do know that the motion to modify, Emily was not committed to bring in her very, very deep concerns about the sexual pornography and the masturbation where he would ejaculate on the floor. These children were in this house. They had access to the whole house. She was very worried about them seeing this and being involved. So, in a sense, does it have an effect on those children? Yes, it would. Has he continued doing this behavior? Yes. The text messages. It's just sad people do stupid things. I'm always amazed at what people would send over a text message and what they would send over email or on Facebook. He sent probably the most vulgar text messages, and I'm 69 years old. I have never seen such language in my life. It can get very, very vulgar with these. And he told the court that the reason he sent these vulgar text messages was to antagonize the mother. That's a clear indication this is not a man who's willing to cooperate with her, not willing to help maintain a good bond, a close relationship between her and those children. That's one of the very important factors that the court must consider. And the question really is what is in the best interest of these children, not what's in the best interest of these parents. Jeremy's girlfriend did testify. Her testimony acknowledged very clearly that Jeremy had very little involvement with his children. He kept them in daycare. He had the children on Monday, Tuesday, and Wednesday and alternating Thursdays. Emily had the children on all day Thursdays and Fridays, Saturdays, and Sundays, so they had fairly equal time. But Jeremy's time was spent, kids were in daycare. Emily would go to the daycare and visit the children at the daycare in order to spend more time with them. She's the one who got involved with all the school activities. She's the one who was involved with all of her daycare activities. If they had an outing, she's the one who went. Jeremy never, ever participated in any of these children's activities in school or the daycare. Does he have any support that he took them to daycare when he wasn't working? He had testified to this himself. He said the reason he did it was because if he kept them home by 10 o'clock for Little Girl, the boys at school, by 10 o'clock Little Girl was trying to go to daycare. Whether she was or not of it, no. I don't have any evidence one way or the other. As you said, the children were not interviewed. But it doesn't alter the fact he kept them there from like 7.30 in the morning to 5 o'clock, sometimes 7.30 in the evening on every one of his days. And most of the days he worked at home, but he still kept the children at the daycare. So he didn't have a great deal of involvement with these children. He didn't spend any real quality time with these children because he only had them in the evening and during the night while they slept. Then they went back to school or daycare the next day. So primary caregiver has been Emily, always has been Emily, not Jeremy. That's another factor we should consider. And that was one of the statutory factors is the interaction and interrelationship with the children. And the custody, I mean, where the children are adjusted to, Jeremy says they were adjusted to his home. The truth is they were adjusted to both. And, no, Emily didn't say he was a bad father, he's not mean to the children, but she was very concerned about his behavior, his lack of judgment. But to do this in his home where these children could walk in at any time and see this. Now the child was only three when he saw it, but he saw his dad pulling up his pants when he walked in the room. Jeremy yelled at Emily because she dared let that child walk into that room and see him. So even Jeremy knew what he was doing was wrong. So, no, I do not believe the judge, nor do I believe any of the evidence would support that this judge acted in abuse of his discretion. We need to consider the best interest of these children under the circumstances and under all the evidence that was presented. Thank you. Thank you, counsel. Counsel? Thank you, Your Honor. I would just like to take a few minutes to clarify a few things. I do agree with Ms. Meyer's position that just because the fact Jeremy had temporary custody does not mean that he should be awarded permanent custody. I agree with Ms. Meyer, and that is not the point we are trying to make. The point we are wanting to have the court take into consideration is that this had been the child's, the children's home. This is where they had been for two and a half years, and I think that's an important thing for the court to take into consideration. Also, Ms. Meyer stated that there was some conflict regarding how Jeremy got the children in January of 2008. Emily testifies because she could not financially care for the children. There was a court order providing Jeremy, requiring him to pay child support at the time she called him and said, if the cops were at my house, they were coming to check on the children because at 5 a.m. in the morning, she's screaming at the top of her lungs to these two young children so loudly that the neighbors called the cops because they were concerned about the children. She then gets on the phone, calls Jeremy, says, come get the kids. I can't take care of them. At that point in time, then Ms. St. Peter was represented by an attorney at that point in time. Mr. St. Peter had an attorney at that point in time. There was a new order entered that terminated Jeremy paying child support and giving him temporary custody of those children. That is how he got temporary custody of the children, not because Ms. St. Peter could not hugely care for them. Also, Ms. Meyer stated that Emily argued she could only get extra time if she performed sexual favors. She stated that, but she never went further and said, here are dates and times that I was not able to see my children when I wanted to. There was no testimony that she was ever actually denied time with the children. And also, Jeremy's girlfriend, Crystal Graham, testified regarding what their schedule was like in the morning when they were getting up, what their schedule was like in the evening whenever they would get home from work. Jeremy was involved. Crystal never said, Jeremy gets home in the night, he goes downstairs, and I'm left taking care of these three kids. That was not her testimony. They were involved in fixing the meals. They were involved in getting baths. They were involved in reading, playing games. Jeremy himself testified as well as to the activities that he's involved with the children. So again, we would ask the court to respectfully reverse the trial court's decision. Thank you, Your Honors. Thank you, Counsel. We appreciate briefs and arguments of counsel. We'll take the case under advisement. Thank you.